NEW ERA CONSTRUCTION, Appellant,

v.

The UNITED STATES, Appellee.

No. 89–1234.

United States Court of Appeals,
Federal Circuit

Nov. 29, 1989.
Rehearing Denied Jan. 5, 1990.

and a contractor. *New Era Constr.,* HUD BCA No. 88–3406–C6, 89–1 B.C.A. ¶ 21,376, at 107,736. We affirm.

I

A. The appellant, New Era Construction (New Era), entered into a so-called "turnkey contract" with the Indian Housing Authority of the Sac and Fox Tribe of Missouri (Housing Authority), under which New Era was to construct low-income housing for the Housing Authority. The contract, described as a "Turnkey Contract of Sale," referred to an annual contributions contract between the Department of Housing and Urban Development (HUD) and the Housing Authority, "under which HUD will provide assistance to the Purchaser [the Housing Authority] for the acquisition of the Project...." Turnkey Contract of Sale, § 2.1, Form HUD–53015 (10–77). The turnkey contract stated that HUD "has agreed to provide financial assistance to the Purchaser for the Project in accordance with the Annual Contributions Contract." *Id.*

The turnkey contract recited that it was "made by and between New Era Construction ('Seller') and Housing Authority of the Sac and Fox Tribe of Missouri, a Public Housing Agency ('Purchaser')." *Id.* at 3. The contract was signed for the parties by the owner of New Era, and by the two chairpeople of the Housing Authority. It was "approved" for the United States by the Acting Manager of the HUD office in the area. *Id.* at 4. The turnkey contract stated that "[t]he approval of this Contract by HUD signifies that the undertaking by the Purchaser of the acquisition of the Project constitutes a 'Project' eligible for financial assistance under the Annual Contributions Contract included in this Contract as Exhibit A; that said Annual Contributions Contract has been properly authorized; that funds have been reserved by HUD and will be available to effect payment and performance by the Purchaser hereunder; that HUD has approved the terms and conditions of this Contract; and that HUD and the Purchaser have agreed

Charles Buchanan, Joplin, Mo., argued for appellant.

Donald E. Kinner, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Mary Mitchelson, Asst. Director and Catherine A. Christman. Also on the brief was John Opitz, Office of Gen. Counsel, Housing and Urban Development, Washington, D.C., of counsel.

Before BALDWIN and FRIEDMAN,[*] Senior Circuit Judges, and MAYER, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This is an appeal from a decision of the Department of Housing and Urban Development Board of Contract Appeals (Board) dismissing, for lack of jurisdiction, a claim against the Department based upon an alleged contract between the Department

---

[*] Judge Friedman took senior status on November 1, 1989.

that they shall not amend or modify the Annual Contributions Contract in any manner which would reduce the amount of the loan or annual contributions payable thereunder with respect to the Project." *Id.* § 1.9.

At the same time that the turnkey contract was executed, HUD and the Housing Authority executed an Indian Low–Rent Annual Contributions Contract, No. FW 3395 (dated Oct. 12, 1983) (contributions contract). Under that contract, HUD agreed to finance the construction of the housing project by providing funds to the Housing Authority. The contributions contract gave HUD authority over numerous aspects of the construction and operation of the low-cost Indian housing to be constructed.

Section 14.6 of the contributions contract provided:

NO THIRD PARTY RIGHTS CONFERRED.

Nothing in the ACC shall be construed as creating or justifying any claim against HUD by any third party.

Section 13.6 of the construction contract, captioned "Special Contract Clause for Turnkey Projects," stated in part:

If HUD determines that a Substantial Default has occurred it shall take appropriate action to cure the default and, if necessary for the prompt continuation of the undertaking of the Project, HUD shall take delivery of such right, title or interest in the Project as the IHA [Housing Authority] may have and perform the Preliminary Contract of Sale or Contract of Sale, as the case may be. The provisions of this paragraph are made with, and for the benefit of, the Seller [New Era] and his assignees who will have been specifically approved by HUD prior to such assignment and shall be enforceable by them.

B. Alleging that the construction contract had been improperly terminated, New Era filed a claim with the contracting officer. The contracting officer denied the claim, and New Era appealed to the Board. On its own motion and after briefing by the parties, the Board dismissed the appeal

for want of jurisdiction. *New Era Constr.,* 89–1 B.C.A. at 107,736. The Board, with one member dissenting, held that there was no "express or implied-in-fact Federal procurement contract between [New Era] and HUD," *id.* at 107,737, and "conclude[d] that there is no basis under the CDA [Contract Disputes Act of 1978, 41 U.S.C. § 601, *et seq.* (1982 & Supp. V 1987)], for the Board to exercise jurisdiction over this controversy." *Id.* at 107,738.

## II

■ A. The only contract to which New Era was a party was the turnkey contract between it and the Housing Authority. Although the turnkey contract referred to the contributions contract between HUD and the Housing Authority, the contributions contract was not made a part of the turnkey contract, either expressly or through incorporation by reference. HUD "approved" the turnkey contract, but that contract specified that such approval indicated only that the housing project satisfied the criteria for HUD to enter into the contributions contract. *See* Form HUD–53015 (10–77), § 1.9. HUD's approval did not make HUD a party to the turnkey contract. *Cf. Correlated Dev. Corp. v. United States,* 556 F.2d 515, 519, 214 Ct.Cl. 106 (1977).

The only contract to which HUD was a party was the contributions contract, which was between HUD and the Housing Authority. New Era was not a party to that contract, and that contract gave New Era no rights against HUD. To the contrary, section 14.6 of the contributions contract stated that nothing in that contract "shall be construed as creating or justifying any claim against HUD by any third party." With respect to that contract, New Era was exactly that: a third party.

■ New Era argues, however, that in view of the extensive involvement of HUD in the construction project and section 13.6 of the construction contract, the turnkey contract and the construction contract taken together formed a contract between New Era and HUD. The Court of Claims,

the decisions of which bind us, *see South Corp. v. United States*, 690 F.2d 1368, 1370 n. 2 (Fed.Cir.1982), has held several times that the government's involvement in the financing and supervision of a contract between a public agency and a private contractor does not create a contract between the government and the contractor, for the breach of which the contractor may sue the government.

The leading case is *D.R. Smalley & Sons, Inc. v. United States*, 372 F.2d 505, 178 Ct.Cl. 593, *cert. denied*, 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed.2d 97 (1967). The contracts there, which were for highway construction, were between Smalley and the State of Ohio. The United States statutorily was authorized to reimburse Ohio for 90 percent of the State's costs, and exercised substantial control over the contracts and their performance. The contractor sued the United States for the losses it allegedly suffered in performing the contracts. It alleged that the involvement of the United States in the construction contracts created an express or implied contract between Smalley and the United States.

The Court of Claims dismissed the suit. It held that the involvement of the United States in the financing and regulation of the State's highway construction contract "were sovereign acts of the Government," and that "the Federal Government is not liable for damages resulting from sovereign acts performed by it in its sovereign capacity." 372 F.2d at 507.

Noting that "[t]he National Government makes many hundreds of grants each year to the various states, to municipalities, to schools and colleges and to other public organizations and agencies for many kinds of public works, including roads and highways," the court stated: "It would be far-fetched indeed to impose liability on the Government for the acts and omissions of the parties who contract to build the projects, simply because it requires the work to meet certain standards and upon approval thereof reimburses the public agency for a part of the costs." *Id.* The court pointed out that the United States was not a party to the construction con-

tracts, which "were between the state and plaintiff," and it concluded that "since there was no privity of contract, express or implied, between plaintiff [the construction company] and defendant [the United States], the defendant is not liable in contract for the damages claimed by plaintiff." 372 F.2d at 508.

The facts in *Housing Corporation of America v. United States*, 468 F.2d 922, 199 Ct.Cl. 705 (1972), closely paralleled those of the present case. There the plaintiff entered into a contract with a local housing authority to construct low-cost housing. HUD approved the construction contract and also entered into an annual contributions contract with the housing authority, to which the plaintiff was held not to be a party. In granting summary judgment for the government and dismissing the contractor's suit against the United States for additional work it allegedly performed, the court stated:

> The contract here in issue is one of many pursuant to which the Federal Government subsidizes projects of state and local authorities for the public betterment. The United States, however, does not make itself a party to the contracts relating to said projects but obligates itself by separate agreements, as here, to local authorities for the funding of those projects it approves. The significance of that approval is spelled out here in Article IX [which is substantially identical to section 1.9 of Form HUD–53015 (10–77)]. This does not create an express or implied contract between plaintiff and defendant nor does it make the Commission defendant's agent through HUD. HUD's actions were performed in defendant's capacity as sovereign. This principle has been settled for some time by a similar case involving construction under the Federal–Aid Highways Act.

468 F.2d at 924. *See also Aetna Casualty & Sur. Co. v. United States*, 655 F.2d 1047, 1052–53, 228 Ct.Cl. 146 (1981).

B. New Era argues, however, that the present case is different from those cases because, it asserts, section 13.6 of the con-

tributions contract gave New Era certain rights against HUD and therefore made it a party to that contract. The pertinent portions of that section provide:

With respect to any Project to be acquired by the Turnkey method which is covered by a Contract of Sale or Preliminary Contract of Sale which includes this clause and bears the written approval of HUD, failure of the IHA [Housing Authority] to expeditiously continue the undertaking of the Project or to comply with the Preliminary Contract or Contract of Sale, ... or if the IHA asserts or claims that the Preliminary Contract of Sale or Contract of Sale is not binding upon the IHA for any such reason, the occurrence of any such event, if the Seller [New Era] is not in default, shall constitute a Substantial Default for the purpose of this Article 13. In such case, if the Seller, promptly upon the occurrence of such event, notifies HUD and provides supporting evidence thereof and of the fact that the Seller is not in default, HUD shall determine whether a Substantial Default has occurred and whether the Seller is not in default. If HUD determines that a Substantial Default has occurred it shall take appropriate action to cure the default and, if necessary for the prompt continuation of the undertaking of the Project, HUD shall take delivery of such right, title or interest in the Project as the IHA may have and perform the Preliminary Contract of Sale or Contract of Sale, as the case may be. The provisions of this paragraph are made with, and for the benefit of, the Seller and his assignees who will have been specifically approved by HUD prior to such assignment and shall be enforceable by them.

The Board stated that New Era asserted that the claim it filed with the contracting officer "alleges that the contract was wrongfully terminated." *New Era Constr.*, 89–1 B.C.A. at 107,737. In its brief in this court, New Era states that "the Contract was terminated by HUD before performance was completed."

New Era argues that "[t]his language [in section 13.6] clearly states that the promise by HUD was made *with* New Era and for New Era's benefit; that if New Era performed its duties under the Contract and if the Housing Authority defaulted, HUD had an obligation to cure the default and that this was an 'enforceable' obligation." It summarizes its position as follows: "HUD promised that if the Housing Authority defaulted on the contract, and that if New Era was not in default, HUD would cure the default. This promise was made to New Era and is enforceable by it."

■ We disagree with New Era that, in the circumstances of this case, section 13.6 of the contributions contract permits New Era to recover from the United States for the Housing Authority's alleged default in its performance of the turnkey contract. Section 13.6 requires HUD to act only in carefully described and circumscribed situations. Before HUD's obligation arises, (1) New Era was required promptly to notify HUD of the Housing Authority's default and provide supporting evidence of such default and of New Era's nondefault, and (2) HUD must have determined that a default occurred. Only if these two conditions existed was HUD required to take "appropriate action" to "cure" the default including, if "necessary," the performance of the contract.

The only information in the joint appendix with respect to New Era's actions relating to the alleged default is New Era's statement that the contract had been wrongfully terminated and that it had so informed the contracting officer in its claim. *See New Era Constr.*, 89–1 B.C.A. at 107,737. This statement was not sufficient to trigger HUD's obligations under section 13.6 or to give New Era the right to recover from the United States for HUD's alleged breach of that obligation.

Although section 13.6 deals with a default by the Housing Agency, New Era tells us in its brief that the termination of the contract was made by HUD. Moreover, the record before us does not show either that New Era promptly notified HUD of the Housing Authority's alleged

default or that HUD determined there had been a default.

*Correlated Development Corporation, supra,* involved a special turnkey project provision in an annual contributions contract that, in its critical elements, was virtually identical to section 13.6 of the present contract. There, too, the contractor relied upon the provision as a basis for suing the United States for the alleged breach by a local housing authority of contracts under which the contractor agreed to build low-cost housing. In rejecting the contractor's argument that that provision "gives the plaintiff the right to maintain this suit against the government," the court stated that the "simple answer" to this argument was that "none of the contingencies mentioned in Section 13 ever occurred. There was never a substantial default by LHA [the housing authority involved in that case]; the government never took over nor completed the projects nor was ever requested to do so by the LHA or the plaintiff; nor was the right, title, or interest of LHA in the projects ever delivered or transferred to the government." 556 F.2d at 521.

Although New Era asserts that here there was a default in the contract, the evidence before us does not show a demonstration by New Era that "the contingencies mentioned" in section 13.6 "ever occurred." *Correlated Dev. Corp.,* 556 F.2d at 521. The reasoning in *Correlated Development* thus is equally applicable to the present case. New Era cannot rely upon section 13.6 to distinguish the cases we have cited as rejecting New Era's claim or as a basis for holding the United States liable for the Housing Authority's alleged default in the turnkey contract.

### III

■ The Board's decision that it lacks jurisdiction also may be affirmed on the alternative ground, upon which the Board relied and which the government argued, that any possible contract between New Era and HUD was not a contract over which the Board had jurisdiction under the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq.* (1982).

Section 3(a) of the Contract Disputes Act, 41 U.S.C. § 602(a) (1982), makes the Act applicable to "any express or implied contract ... entered into by an executive agency for ... (3) the procurement of construction ... of real property." The "procurement" that this provision covers is procurement by the executive agency. As the Board has stated, "the acquisition by purchase, lease or barter, of property or services for the *direct benefit or use* of the Federal Government ... characterizes a Federal procurement." *Mayer,* HUD BCA No. 83–823–C20, 84–2 B.C.A. ¶ 17,494, at 87,133, 87,137 (emphasis in original).

The only contract for the "procurement of construction ... of real property" here involved was the turnkey contract by which the Housing Authority undertook to procure real property. The contributions contract was not one for the procurement of construction of real property by an executive agency; it was for the financing of a procurement of construction by a nonfederal agency, the Housing Authority. The contributions contract was not designed to enable HUD to procure real property but to facilitate the procurement of such property by the Housing Authority.

If the turnkey contract had been performed, the Housing Authority, not HUD, would have become the owner of the low-income housing. HUD would take title to that property only if the Housing Administration defaulted in its performance of the turnkey contract and HUD concluded that it was required to take over the property because such takeover would be "necessary for the prompt continuation of the undertaking of the Project." Section 13.6. HUD was not seeking in the contributions contract to obtain for itself the low-cost housing. It would acquire that property only in the untoward circumstances specified in section 13.6.

As noted, New Era has not shown, or even alleged, that these conditions were met. Indeed, its own acquisition of that property was the last thing HUD wanted to

result from its financing and regulation of the turnkey contract.

### CONCLUSION

The decision of the Department of Housing and Urban Development Board of Contract Appeals dismissing New Era's appeal for want of jurisdiction is

AFFIRMED.