UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED FEDERAL LEASING,
INCORPORATED,
            *Plaintiff-Appellant,*

            v.

UNITED STATES OF AMERICA,
            *Defendant-Appellee,*        No. 01-1395

            and

EMC CORPORATION OF
MASSACHUSETTS, a/k/a EMC
Corporation,

            *Defendant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-00-1418-A)

Argued: October 30, 2001

Decided: April 17, 2002

Before WIDENER, TRAXLER, and KING, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Erica Steinacker Stoecker, Herndon, Virginia, for Appellant. Rachel Celia Ballow, Assistant United States Attorney, Alexan-

dria, Virginia, for Appellee. **ON BRIEF:** Michael E. Geltner, GELTNER & ASSOCIATES, P.C., Washington, D.C., for Appellant. Kenneth E. Melson, United States Attorney, John A. Dietrich, Senior Trial Counsel, Office of the General Counsel, DEPARTMENT OF THE NAVY, Alexandria, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

The issue on appeal is whether United Federal Leasing's (United)[1] claim against the United States (government) is based in contract or tort. The district court concluded that it lacked jurisdiction over United's suit since its claims were inextricably grounded in contract, and thereby governed by the Contract Disputes Act of 1978, 41 U.S.C. § 601 (amended). Finding United's claim to be a contract dispute, we affirm the district court's dismissal for lack of subject matter jurisdiction.

In 1987, the government entered into a contract (prime contract) with Electronic Data Systems Corporation (EDS) for the leasing of computer equipment to the Navy. As in many government contracts, the prime contract contained escape clauses allowing the government to terminate for various reasons without breaching the contract. These clauses provided for early termination of the prime contract upon the government timely notifying EDS. In addition, the prime contract, through clause H17.1, described the removal responsibilities for the computer equipment upon contract termination.

To fulfill its lease with the government, EDS then subcontracted with EMC Corporation (EMC), a manufacturer and vendor of com-

---

[1]At the time of contracting, United's name was MLC Group, Inc.

puter equipment. This contract referred to the Federal Acquisition Regulations and the Contract Disputes Act procedures of the prime contract. The EDS-EMC contract required EMC to provide computer equipment in exchange for the lease payments EDS was to receive from the government. In 1996, the government issued delivery orders to lease EMC computers for forty-two months under the prime contract. EMC still owned the computers and reserved the option to assign both the government's lease payments and title to the equipment. EMC exercised this option and assigned its rights to United for financing of the computer equipment. United is a commercial equipment lessor/ financier. The EMC-United agreement gave ownership of the computers to United and required EMC to dismantle and remove the computer equipment from the government's sites upon termination of the prime contract.

On August 31, 1998, the government's contracting officer gave the required 30-day notice to EDS for lease termination effective September 30, 1998. Both parties agree that the notice and termination were in compliance with the prime contract. Upon termination, United requested EMC to de-install the equipment and make it available for pickup. EMC failed to do so. United then contacted EDS, demanding the computers' availability on October 1, 1998. EDS promptly responded that the prime contract was satisfied; therefore, EDS no longer had any rights or interests in the equipment since it assigned its rights EMC. United also contacted the government, informing it that United owned the computer equipment and demanded the equipment for removal and remarketing. On October 19, the government responded to United by stating it had terminated the lease at issue, the prime contract was between the Navy and EDS, and the Navy had "no contractual arrangement with your company, [so] you will need to pursue your interest with whomever you have contracted with for this equipment." We are told at oral argument that, ultimately, EMC removed the computers in mid-November, 1998.

On October 21, 1998, United claimed under the Federal Tort Claims Act that the government converted its computer equipment and sought damages of $560,000. In February 2000, the government denied the claim, whereupon United sued both EMC and the government on August 21, 2000. United sought damages for the six-week period following the termination of the prime contract when the gov-

ernment was in possession of the computer equipment. The district court granted the government's motion to dismiss for lack of subject matter jurisdiction on March 2, 2001. United has subsequently settled with EMC.

Appellate jurisdiction exists under 28 U.S.C. § 1291, as a final judgment from the district court. We review de novo the district court's dismissal of the case for lack of subject matter jurisdiction. See *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

While the federal government is normally shielded from liability, the government has waived immunity under the Federal Torts Claims Act, 28 U.S.C. § 2671 (FTCA), and the Contract Disputes Act of 1978, 41 U.S.C. § 601 (amended) (CDA). The FTCA does not create a new cause of action, but provides that the United States is liable for torts "in the same manner and to the same extent as a private individual . . . ." 28 U.S.C. § 2674. Jurisdiction for suit under the FTCA exists in United States District Court. 28 U.S.C. § 1346.

The CDA provides for legal recourse against the government for disputes arising from the procurement of property and services by the federal government.[2] 41 U.S.C. § 602(a). The CDA requires an initial filing with the contracting officer for any governmental contract dispute. 41 U.S.C. § 605(a). Necessary appeals proceed to the agency's board then to the Court of Federal claims. 41 U.S.C. § 607, 609. Unlike the FTCA, the CDA limits jurisdiction to the Court of Federal Claims, rather than U.S. District Courts. *United States v. J&E Salvage Co.*, 55 F.3d 985, 987 (4th Cir. 1995) (citing S. Rep. No. 1118, 95th Cong., 2d Sess. 10, reprinted in 978 U.S.C.C.A.N. 5235, 5244 (noting that "U.S. district court jurisdiction is eliminated from Government contract claims")).

If the basis of this case is in tort, the district court erred in dismissing United's claim under the FTCA; however, if United's claim is contractual, the district court correctly dismissed the case since

---

[2]Case law defines "procurement" as an acquisition by purchase, lease, or barter, or property or services for the direct benefit or use of the federal government." *New Era Constr. v. United States*, 890 F.2d 1152, 1157 (Fed. Cir. 1989).

United did not pursue the required procedural recourse. United argues that this is a mere conversion case, suitable for disposition under the FTCA. It contends that the nature of the complaint is one for tort — specifically that United owned the computer equipment and the government converted this equipment during the six-week period after the termination of the prime contract.

   We agree with the district court, however, that this claim is contractual. The essence of its opinion, with which we agree, follows:

> Plaintiff cannot overcome this Court's lack of jurisdiction by framing the claim against the United States as a tort claim. See *J & E Salvage*, 55 F.3d at 988 (stating that neither contractors nor government may bring contract action in district court simply by recasting claims in tort language or as statutory or regulatory violation). Notwithstanding Plaintiff's arguments, Plaintiff's conversion claim sounds in contract because it is necessary to look at the terms of the contracts between Plaintiff, EMC, EDS, and the Navy to find the source of the rights Plaintiff claims in the computer equipment. See *id.* (noting that the source of the rights claimant sought to vindicate were rooted firmly in contract). Plaintiff's claim for conversion is based on Plaintiff's asserted "right to possession" of the equipment. (Compl. ¶¶ 41-43.) Plaintiff asserts that it possessed the equipment that Defendant has failed to return as a result of the "EMC-MLC Federal contract," by which EMC sold and assigned to Plaintiff all of EMC's right and interest in the equipment and granted Plaintiff a security interest in the equipment. (*Id.* ¶ 14.) As in the Fourth Circuit case of *J & E Salvage*, it is impossible to ignore the terms of the contract documents in deciding whether Plaintiff had a right of possession over the equipment. *See J & E Salvage*, 55 F.3d at 988; *Wood*, 961 F.2d at 199 (stating that a claim was based in contract, not tort, when the only way plaintiff could succeed in proving conversion was to prove existence of a contract sufficient to give him ownership interest). Therefore, Plaintiff's "claims of 'conversion' . . . are merely transparent reformulations of [a] contract dispute." *J & E Salvage*, 55 F.3d at 989. In short, Plaintiff cannot invoke the jurisdiction

of this Court by framing a claim as other than contractual, when, in fact, "the genesis of any wrongdoing by the United States was breach of contract." *Coffey*, 626 F. Supp. at 1248; *see also Wood*, 961 F.2d at 198 (holding that jurisdiction lies in Claims Court where cause of action arises primarily from a contractual undertaking).

The judgment of the district court is accordingly

*AFFIRMED*.