ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Conrad Shipyard, LLC | ) | ASBCA No. 63869 |
| | ) | |
| Under Contract No. 000000-00-0-0000 | ) | |

APPEARANCES FOR THE APPELLANT:      Michael H. Payne, Esq
   Cohen Seglias Pallas Greenhall & Furman, PC
   Philadelphia, PA

                                      Casey J. McKinnon, Esq.
   Cohen Seglias Pallas Greenhall & Furman, PC
   Washington, DC

APPEARANCES FOR THE GOVERNMENT:      Michael P. Goodman, Esq.
   Engineer Chief Trial Attorney
 Scott C. Seufert, Esq.
 Jacqueline Kelly, Esq.
   Engineer Trial Attorneys
   U.S. Army Engineer District, Philadelphia

OPINION BY ADMINISTRATIVE JUDGE MELNICK ON THE GOVERNMENT'S
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT AND ON
APPELLANT'S PARTIAL CROSS-MOTION FOR SUMMARY JUDGMENT

Conrad Shipyard, LLC (Conrad), contends the Army Corps of Engineers (government) breached an implied-in-fact contract to pay it a $1,000,000 stipend to compete for a contract to design and construct a new dredging vessel. In the first count of its complaint, Conrad essentially argues that it performed the contract and the government refused to pay. In the second count, it maintains the government interfered with its performance, breaching the implied duty of good faith and fair dealing. After considering dispositive motions by the parties, we conclude Conrad did not complete performance so is not entitled to recover under Count I. Also, Conrad did not submit a claim to the contracting officer for breach of the duty of good faith and fair dealing. Count II is therefore dismissed for lack of jurisdiction.

STATEMENT OF THE FACTS (SOF) FOR PURPOSES OF THE MOTIONS

1. On December 18, 2020, the government issued a solicitation to procure the design and construction of a dredging vessel. Nobody submitted a proposal. (Compl. ¶ 5; gov't mot. at 3) The government inquired of the industry and discovered that the

engineering and related supplier consultations required to properly develop a proposal cost an estimated $600,000, with no guarantee of a return for offerors. The government officially determined that it was necessary to pay a stipend to cover those associated costs to make the procurement more attractive, generate adequate competition, and provide a level of engineering and pricing that would reduce the government's risk of unsuccessful contract performance. (R4, tab 20)

2. On May 26, 2022, the government issued another solicitation for design and construction of the dredge (R4, tab 4). This time the solicitation included provision for a stipend. It stated the following:

> PURPOSE: The purpose of authorizing a Stipend in Medium Class Hopper Dredge (MCHD) procurement is to stimulate competition and innovation within the dredging shipyard industry. Each Offer, except the contract awardee, who meets the conditions listed below is eligible for an award of a firm fixed price stipend.
>
> 1. The Offeror competed in the MCHD solicitation evaluation process and was unsuccessful in receiving the contract award.
>
> 2. The Offeror's proposal is otherwise rated acceptable in the source selection process. To receive consideration for a stipend, a rating of no less than "Acceptable" must be achieved for all non-price factors except past performance which must be rated other than "No Confidence."
>
> 3. The amount authorized for each stipend award is a firm fixed price of less than or equal to $1,000,000.00.
>
> 4. Unsuccessful Offerors eligible to receive the stipend, shall be notified within 30 calendar days of contract award to invoice for stipend.
>
> 5. Only one stipend will be provided to each offeror regardless if the offeror submitted more than one proposal for evaluation.

2

6.   Maximum stipend pool is $3 Million to allow for up to 3 potential $1,000,000.00 stipends.  In the unlikely event more than 4 acceptable proposals are received (1-Contract Awardee, 3-Acceptable Proposals), each eligible offeror shall receive an equal per capita share of the stipend pool ($3 Million).

(R4, Tab 4 at 426)  Essentially, the solicitation offered to pay a stipend to all offerors competing in the solicitation process whose proposals were acceptable but who did not receive the award.

3.  Offers were due January 5, 2023 (R4, tab 15 at 1-2, 12).  The solicitation also contained FAR 52.212-1, INSTRUCTIONS TO OFFERORS—COMMERCIAL PRODUCTS AND COMMERCIAL SERVICES (NOV 2021) (R4, tab 4 at 437).  As amended, subsection (c) of that clause identified the "[p]eriod for acceptance of offers."  It dictated that "[t]he offeror agrees to hold the prices firm for 120 calendar days from the date specified for receipt, unless another time period is specified in an addendum to the solicitation" (R4, tab 4 at 438, 440).

4.  On January 5, 2023, Conrad submitted a proposal (gov't mot. at 4; app. opp'n & mot. at 23).  Accordingly, its price was to remain firm for 120 days, until May 5, 2023.

5.  On March 2, 2023, the government informed Conrad its proposal was in the competitive range and the government was prepared to enter discussions.  During discussions, all offerors would be allowed to revise their pricing.  (R4, tab 1 at 13) Conrad submitted an updated proposal on March 15, 2023.  There is no indication it altered its price.  After the government reviewed the second submission, it reported on April 7, 2023, that Conrad remained in the competitive range, it had no further questions, and discussions could continue.  Again, the government granted Conrad the opportunity to revise its prices, but it required the final pricing to remain valid through August 1, 2023, beyond the initial 120-day mandate.  (R4, tab 33)  By letter dated April 21, 2023, Conrad forwarded revised prices and expressly agreed they would remain valid until August 1, 2023 (R4, tab 34; gov't mot. at 4; app. opp'n & mot. at 5-6).  The government concedes Conrad's proposal was acceptable for establishing the competitive range (gov't reply at 6).

6.  On June 22, 2023, Conrad withdrew its consent to extend the validity of its proposal, which it acknowledges constituted a withdrawal of the proposal (R4, tab 36 at5; app. opp'n & mot. at 6).  Conrad explained that inflationary impacts, supply chain issues, other commitments, and, perhaps most significantly, the refusal of its surety to issue performance and payment bonds, caused it to withdraw (R4, tab 38 at 3).  On

July 24, 2023, the government issued the award to another contractor (gov't mot at 5; app. opp'n & mot. at 6).

7. On August 3, 2023, Conrad inquired into the process for payment of the stipend. The contracting officer responded on September 15, 2023, that Conrad was ineligible because it had withdrawn from the competition prior to contract award (R4, tabs 39-40).

8. On September 28, 2023, Conrad submitted a certified claim to the contracting officer demanding the $1,000,000 stipend. Conrad characterized the solicitation provisions as a contract and contended it had complied with its terms. (R4, tab 1 at 29-30). The government denied the claim on January 3, 2024 (R4, tab 3). Conrad now appeals.

9. Count I of Conrad's complaint alleges that the parties formed an implied-in-fact contract where Conrad would compete for the procurement and be eligible for the stipend. It contends Conrad performed as specified and the government breached by failing to pay. It seeks the $1,000,000 stipend and an additional recovery on a *quantum meruit* theory for the value it bestowed on the government for participating in the competition. (Compl. ¶¶ 31-43)

10. Count II alleges breach of the implied duty of good faith and fair dealing. The purported support for that assertion is that the government unreasonably delayed contract award by 200 days from the date offers were due, unreasonably required offerors to extend their offers an additional 88 days, and failed to inform Conrad, after Conrad stated its offer could no longer be extended, the award was imminent. These acts allegedly "interfered with Conrad's ability to continue to extend its offer through August 1, 2023," entitling Conrad to $1,000,000 in damages. (Compl. ¶¶ 44-48)

11. The government moves to dismiss Count I's *quantum meruit* component for lack of jurisdiction and failure to state a sum certain. It seeks dismissal of Count II for lack of jurisdiction because it was not submitted as a claim to the contracting officer. The government also asks for summary judgment on the merits. Conrad cross moves for a partial summary judgment finding that its proposal was rated "Acceptable."

DECISION

I.   Count I

"Summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Goodloe Marine, Inc.*, ASBCA No. 62106, 22-1 BCA ¶ 38,053 at 184,774 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The undisputed facts and law

4

dictate that Conrad did not earn the stipend and so the government has not breached a contract by declining to pay it.

The parties argue over whether they formed an implied-in-fact contract. That kind of arrangement is founded upon a meeting of the minds not embodied in an express contract. *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998). Here, the commitments are express. After recognizing the benefit of receiving competitive proposals for the dredge, the government's solicitation expressly promised that it would pay up to a $1,000,000 stipend to all offerors who competed in the solicitation with an acceptable proposal but did not receive the award (SOF ¶¶ 1-2). To compete in the solicitation, an offeror's proposal prices were to remain firm for the 120-day period for acceptance of offers unless otherwise provided by addendum (SOF ¶ 3). These terms amount initially to an express offer by the government to enter a unilateral contract to pay up to $1,000,000 in return for specified performance by Conrad.[1] A unilateral contract is formed by performing the terms of an offer that invites acceptance by performance rather than a return promise. *See Klass Eng., Inc.*, ASBCA No. 22052, 78-2 BCA ¶ 13,236 at 64,716-17. "[T]he essence of a unilateral contract is that one party's promise is conditional upon the other party's performance of certain acts and when the other party performs, the first party is bound." *Wells Fargo Bank., N.A. v. United States*, 88 F.3d 1012, 1019 (Fed. Cir. 1996).

Once Conrad commenced performance by submitting a proposal for the dredge contract, the government's unilateral offer to pay the stipend became an irrevocable option contract. *See Comptech Corp.*, ASBCA No. 55526, 08-2 BCA ¶ 33,982 at 168,082-083; *Klass Eng.*, 78-2 BCA ¶ 13,236 at 64,717; RESTATEMENT (SECOND) OF CONTRACTS ¶¶ 45, 62 cmt. b (1981). The government was bound to pay the stipend upon Conrad's full satisfaction of the government's terms, but not if Conrad

---

[1] We possess jurisdiction to entertain an appeal upon this contract. The Board's jurisdiction is primarily governed by the Contract Disputes Act, 41 U.S.C. § 7101-09 (CDA). *Kellogg Brown & Root Servs., Inc.*, ASBCA Nos. 59385, 59744, 20-1 BCA ¶ 37,656 at 182,825. Among other things, the CDA applies to express or implied contracts for the procurement of services. 41 U.S.C. § 7102(a)(2). In this context, "procurement" is "the acquisition by purchase, lease or barter, of . . . services for the *direct benefit* . . . of the Federal Government." *Wesleyan Co. v. Harvey*, 454 F.3d 1375, 1378 (Fed. Cir. 2006) (quoting *New Era Constr. v. United States*, 890 F.2d 1152, 1157 (1989)) (emphasis in original). The government unilaterally offered to contract with offerors to obtain proposals for the dredge after determining it would directly benefit from the competition generated, providing it with more accurate engineering and pricing to reduce the government's risk of unsuccessful contract performance (SOF ¶ 1). It was willing to pay all qualified offerors to procure this service. We find this contract falls within the scope of the CDA.

abandoned performance before completion. *See Klass Eng.*, 78-2 BCA ¶ 13,236 at 64,717; RESTATEMENT (SECOND) OF CONTRACTS ¶ 45 cmt. e (1981). As already observed, to compete in the solicitation Conrad's proposal price initially had to remain firm for 120 days (SOF ¶ 3). But that changed. After the government granted Conrad one chance to revise its price prior to the elapse of 120 days, which Conrad does not appear to have exploited, on April 7, 2023, the government allowed it to do so again. However, this opportunity was accompanied by a requirement that the price remain valid for an extended period, until August 1, 2023. On April 21, 2023, Conrad revised its price and agreed to the government's demand, expressly committing that the price would remain valid until August 1.[2] (SOF ¶ 5) Through these acts, the parties modified the option contract. Instead of qualifying for a stipend if it submitted an acceptable but unsuccessful dredge proposal remaining firm 120 days until May 5, 2023, Conrad's proposal had to remain valid until August 1. When, on June 22, 2023, Conrad withdrew its proposal because of inflation, supply chain issues, other commitments, and inability to secure bonding (SOF ¶ 6), it abandoned performance before completion of the option contract's terms and before any determination was made whether Conrad's proposal was successful.

Contrary to Conrad's suggestions, it was not entitled to as much as $1,000,000 for simply submitting an acceptable proposal that it could withdraw at a time of its choosing before the government made an award decision, assuring the government could not bind it to its proposal's terms. Only offerors competing in the solicitation qualified for a stipend and to do so prices had to remain firm during the period for acceptance of offers, as extended by the parties' agreement (SOF ¶¶ 2-3). Given Conrad's abandonment of performance before completion, the government never became obligated to pay the stipend. Consequently, Count I is rejected.[3]

### II. Count II

In Count II, Conrad complains that, aside from refusing to perform by paying the stipend, the government also breached the contract's implied duty of good faith and fair dealing by unreasonably delaying contract award by 200 days from the date offers were due, unreasonably requiring offerors to extend their offers an additional 88 days, and failing to inform Conrad, after Conrad stated its offer could no longer be extended,

---

[2] Had Conrad declined to alter its price and extend the validity period then the government's unilateral attempt to enlarge that period quite plausibly would not have been enforceable. Assuming no award to it, Conrad might have been able to claim its stipend upon expiration of the 120 days. However, we need not decide that here.

[3] Because we reject Count I on its merits, we need not address the government's challenge to Conrad's demand, in addition to the stipend, for a *quantum meruit* remedy.

the award was imminent. It says these delays and actions interfered with Conrad's ability to extend its offer through August 1, 2023, entitling Conrad to damages. (Compl. ¶¶ 44-48) "The duty of good faith and fair dealing prohibits 'interference with or failure to cooperate in the other party's performance.'" *Ace Elecs. Def. Sys*, ASBCA No. 63224, 22-1 BCA ¶ 38,213 at 185,569 (quoting *LaBatte v. United States*, 899 F.3d 1373, 1379 (Fed. Cir. 2018)). A breach of it does not arise from a party's failure to perform its express promise. Instead, it is an implied duty not to interfere with the other party's performance or destroy its reasonable expectations regarding the fruits of the contract. *See Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005). The government contends we lack jurisdiction over this count because Conrad did not pursue it as a certified claim. We agree.

Under the CDA, our jurisdiction is dependent upon whether Conrad submitted a written claim to the contracting officer for a decision. 41 U.S.C. § 7103-05; *Taj Al Safa Co.*, ASBCA No. 58394, 13 BCA ¶ 35,278 at 173,157; *see also Tolliver Grp., Inc. v. United States*, 20 F.4th 771, 775-76 (Fed. Cir. 2021) (explaining the CDA's jurisdictional claim submittal requirements). We cannot exercise jurisdiction over new claims asserted here that were not previously presented to the contracting officer. *Wilwood Eng. Inc.*, ASBCA No. 62773, 22-1 BCA ¶ 38,116 at 185,144. Claims are separate from one another when they assert grounds that are materially different from each other factually or legally. *K-Con Bld. Sys., Inc. v. United States*, 778 F.3d 1000, 1005-06 (Fed. Cir. 2015); *Tolliver Grp.,* 20 F.4th at 777 (finding claims separate when legal theories are materially different); *see also Wilwood*, 22-1 BCA ¶ 38,116 at 185,144-45 (explaining the action before the Board must arise from the same operative facts as the claim submitted to the contracting officer, seek essentially the same relief, and not advance a materially different legal theory). Also, a key to determining whether matters advanced before the Board are part of the same claim, or two different ones, is whether the same or related evidence will determine the outcome. *See Red Bobtail Trans*, ASBCA Nos. 63783, 63784 24-1 BCA ¶ 38,598 at 187,639-40 (citing *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990)). We consider more than just the claims but the totality of circumstances. *Id.* at 187,640.

Conrad's claim recited that it submitted a proposal within the competitive range, explaining that it expected to either receive the award or a stipend. It described the requirements for entitlement to a stipend, arguing it met them. It therefore purported to be a claim "under the plain language of the contract for the million-dollar stipend." (R4, tab 1 at 29-30) The thrust of the claim was that Conrad performed the contract and earned the stipend, but the government failed to perform its promise to pay it. As described above, the evidence relevant to that inquiry goes to the nature of the arrangement between the parties and whether it was performed by Conrad. In contrast, in Count II Conrad complains that the government delayed awarding the contract, unreasonably extended the period prices were to remain valid, and failed to

inform Conrad that award was imminent, entitling Conrad to damages for breach. These allegations that the government interfered with or neglected to cooperate with Conrad's performance advance a materially different theory of recovery than the claim's contention that Conrad performed sufficiently to earn the stipend under the plain language of the contract. They would turn upon different operative facts and evidence relating to how the government conducted itself toward Conrad.[4] It cannot reasonably be concluded that the contracting officer should have recognized the claim encompassed these issues. *See Tolliver Grp.,* 20 F.4th at 777 (declining to consider two claims the same when it could not "reasonably be demanded that the contracting officer have recognized that [the contractor] was seeking a determination of the issues raised by" the second theory). Given the totality of the circumstances, Conrad's good faith and fair dealing allegations are not within the scope of the claim it submitted to the contracting officer, and we lack jurisdiction to consider them.

CONCLUSION

The government's motion for summary judgment upon Count I is granted. The government's motion to dismiss Count II for lack of jurisdiction is granted. Because Conrad abandoned performance prior to earning the stipend, its motion for partial summary judgment finding its proposal acceptable is irrelevant and denied. The appeal is dismissed.

Dated: March 24, 20205

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

---

[4] The claim does refer to the government's request that Conrad extend its pricing "unreasonably and into an escalating price environment," at which point it lost its bonding and had to withdraw its proposal (R4, tab 1 at 30). But this reference is made in the broader context of explaining that Conrad performed sufficiently to earn the stipend. It is not put forth itself as a breach of good faith and fair dealing, entitling Conrad to damages.

I concur

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63869, Appeal of Conrad Shipyard, LLC, rendered in conformance with the Board's Charter.

Dated: March 24, 2025

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

9