# United States Court of Appeals for the Federal Circuit

---

**PARSONS EVERGREENE, LLC,**
*Appellant*

**v.**

**SECRETARY OF THE AIR FORCE,**
*Cross-Appellant*

---

2019-1931, 2019-1975

---

Appeals from the Armed Services Board of Contract Appeals in Nos. 58634, 61784, Administrative Judge J. Reid Prouty, Administrative Judge Craig S. Clarke, Administrative Judge Richard Shackleford.

---

Decided: August 7, 2020

---

CAMERON HAMRICK, Miles & Stockbridge PC, Washington, DC, argued for appellant. Also represented by RAYMOND MONROE.

ROBERT R. KIEPURA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for cross-appellant. Also represented by ETHAN P. DAVIS, STEVEN JOHN GILLINGHAM, ROBERT EDWARD KIRSCHMAN, JR.; LORI R. SHAPIRO, Office of General Counsel, United States General Services Administration, Washington, DC.

―――――――――

Before DYK, CLEVENGER, and HUGHES, *Circuit Judges.*

DYK, *Circuit Judge.*

Parsons Evergreene, LLC ("Parsons") appeals from two decisions by the Armed Services Board of Contract Appeals ("Board").  The Board granted in part and denied in part Parsons' claims for equitable adjustment on a contract for the design and construction of two buildings at McGuire Air Force Base.  The government cross-appeals, contending that the Board lacked jurisdiction; that we lack jurisdiction in part; and, on the merits, that the Board erroneously required it to disprove the reasonableness of Parsons' claimed costs.  We affirm in part, reverse in part, dismiss in part, and remand.

## BACKGROUND

On December 12, 2003, the government awarded Parsons a $2.1 billion indefinite-delivery, indefinite-quantity contract ("Contract") for planning and construction work.[1] The work was to be described in subsequent task orders. On July 13, 2005, the government issued a $34 million task order ("Task Order") under the Contract to complete an existing, concept-level design and construct two facilities, known as the Temporary Lodging Facility and the Visiting Quarters, at the McGuire Air Force Base in New Jersey. The Temporary Lodging Facility was to be a 50-unit transitional housing facility for use by military and civilian personnel.  The Visiting Quarters was to be a 175-unit facility similar to a hotel with individual rooms and private bathrooms.  Design and construction were completed, and the

―――――――――

[1]     The contract was originally awarded to Parsons Infrastructure and Technology Group Inc.  The contract was transferred to Parsons via novation on September 7, 2004.

U.S. Department of the Air Force ("Air Force") accepted the completed facilities for "beneficial use" on September 11, 2008.  J.A. 96.

On June 29, 2012, Parsons submitted a claim to the Air Force seeking approximately $34 million in additional costs that Parsons allegedly incurred in the design and construction process.  The contracting officer issued a final decision on March 27, 2013 almost entirely denying Parsons' claim, which Parsons appealed to the Board under the Contract Disputes Act ("CDA").  In separate decisions in ASBCA Nos. 58634 and 61784, the Board denied in part and sustained in part Parsons' claim, awarding Parsons about $10.5 million plus interest.

Parsons appeals.  The government cross-appeals, contending that the Board lacked jurisdiction; that we lack jurisdiction in ASBCA No. 61784; and that on the merits the Board erroneously required it to disprove the reasonableness of Parsons' claimed costs.  We review the Board's legal conclusions de novo and its factfinding for substantial evidence.  41 U.S.C. § 7107(b).

DISCUSSION

I

At the outset, we must resolve a jurisdictional challenge.  The government contends that the Board lacked CDA jurisdiction over this case.  We disagree.

The CDA provides a process for dispute resolution of certain contract claims against the government.  As relevant here, the CDA applies to contracts "made by an executive agency" for "the procurement of services" or "the procurement of construction . . . of real property."  41 U.S.C. § 7102(a)(1), (3).  Claims by contractors are first submitted to a contracting officer, who issues a decision on the claim.  41 U.S.C. § 7103(a)(1), (d).  The contractor may appeal the contracting officer's decision to a Board of

Contract Appeals. *Id.* § 7104(a). The Board's decision may, in turn, be appealed to this court. *Id.* § 7107(a)(1).

## A

The government first contends that the Board lacked jurisdiction under the so-called "NAFI doctrine." The Board concluded that it had jurisdiction because the NAFI doctrine had been abrogated by this court's decision in *Slattery v. United States*, 635 F.3d 1298 (Fed. Cir. 2011) (en banc).

Beginning in the late 1960s, our predecessor court held in a line of cases that neither the Court of Federal Claims ("Claims Court") nor the Boards of Contract Appeals had jurisdiction over contract disputes with nonappropriated fund instrumentalities ("NAFIs"). *Kyer v. United States*, 369 F.2d 714 (Ct. Cl. 1966). "A 'nonappropriated fund instrumentality' is one which does not receive its monies by congressional appropriation." *United States v. Hopkins*, 427 U.S. 123, 125 n.2 (1976). As relevant to Board jurisdiction, these cases construed the phrase "executive agency" in the CDA to exclude contracts made by NAFIs. *See, e.g.*, *Furash & Co. v. United States*, 252 F.3d 1336, 1343 (Fed. Cir. 2001); *Strand Hunt Const., Inc. v. West*, 111 F.3d 142 (Fed. Cir. 1997) (unpublished table decision). As to Claims Court jurisdiction, these cases construe the Tucker Act's authorization of suits against "the United States" to exclude NAFIs. *See* 28 U.S.C. § 1491(a)(1); *Kyer*, 369 F.2d at 719 .

In 2011, in our en banc decision in *Slattery*, we held that the Claims Court had Tucker Act jurisdiction over a dispute between a contractor and the Federal Deposit Insurance Corporation ("FIDC"), even though the FDIC was a NAFI. 635 F.3d at 1310, 1314. In so holding, we abrogated the NAFI doctrine for Tucker Act claims. *Id.* at 1321. We have not yet decided whether *Slattery* also abrogated the NAFI doctrine for CDA disputes appealed to a Board of

Contract Appeals.  We expressly reserved that the question in one later case.  *See Minesen Co. v. McHugh*, 671 F.3d 1332, 1337 (Fed. Cir. 2012).

The government asserts that the Board lacked CDA jurisdiction under the NAFI doctrine.  It points out that the Board found that the Task Order was made by the Air Force Services Agency ("AFSVA"), a NAFI.  We need not decide the current status of the NAFI doctrine as applied to the Boards of Contract Appeals because, even under pre-*Slattery* precedent, the dispute here would not be barred.  Contrary to the Board's finding, the contract is not a NAFI contract.

The contracting documents show that the Task Order was made by the Air Force and not by the AFSVA.  The Contract on which the Task Order is based was "Issued By" the "Air Force Materiel Command" ("AFMC"), a part of the Air Force that the government admits is not a NAFI, and was to be "Administered By" the "Department of the Air Force."  J.A. 733.  The request for proposal ("RFP") that led to the Task Order uses "Department of the Air Force" letterhead and states that "[t]he USAF intends to issue a competitive [Task Order]."  J.A. 4823 (emphasis added).  The Task Order, like the Contract, was "Issued By" the "Air Force Materiel Command" and "Administered By" the "Department of The Air Force."  J.A. 798.  The contracting officer who signed the Task Order was from the AFMC.  The government has not identified any mention of the AFSVA or any other NAFI in either the Contract or the Task Order.

The contractual terms further support the conclusion that this was not a NAFI contract.  Air Force Manual 64-302, which "provid[es] guidance and procedures for Air Force NAF contracting," states that "when FAR clauses are used in NAFI contracts, the contracting officer will delete references to 'Government' and substitute 'NAFI.'"  Department of the Air Force, Manual 64-302, Nonappropriated

Fund (NAF) Contracting Procedures, at 1, 15 (Nov. 3, 2000), http://afpubs.hq.af.mil.  Yet the Contract includes many FAR clauses referring to "Government" and no references to the contracting entity's being a "NAFI."

The government contends that the Task Order is a NAFI contract because the Air Force did not and could not have lawfully funded it with appropriations.  The government points out that the funds used for the Task Order were "non-appropriated funds."  Cross-Appellant's Reply 4 (citing J.A. 804).  The government contends that "a military department must make a specific request to Congress for funding for a specified building project, and Congress must grant funding authority for that project, in order for a military department to be allowed to expend appropriated funds for a military construction project."  *Id.* at 11.[2]

---

[2]     For this proposition, the government relies on 10 U.S.C. § 2802(a), which provides that "the Secretaries of the military departments may carry out such military construction projects . . . as are authorized by law."  *See also* 10 U.S.C. § 114(a) ("No funds may be appropriated . . . to or for the use of any armed force or obligated or expended for . . . military construction . . . unless funds therefor have been specifically authorized by law."); G. James Herrera, Cong. Rsch. Serv., R44710, Military Construction: Authorities, Process, and Frequently Asked Questions 2 (2019) ("In practical application of [sections 2802 and 114], Congress has required project-by-project authorization and appropriation for military construction projects.").

The government also cites to the 2005 National Defense Authorization Act, Pub. L. 108–375, 118 Stat. 1811, 2108–11 (2004) ("Authorization Act").  The Authorization Act listed and provided appropriations for construction at dozens of Air Force bases, but did not authorize construction at McGuire Air Force Base, where the Visiting

Congress did not provide the Air Force with the required authorization here, the government asserts, so the Task Order must have been a NAFI contract.

Even assuming *arguendo* that the Air Force could not have used appropriated funds for the Task Order, the government's argument fails. The government relies on *Hopkins* and *Furash* to suggest that a contract paid from nonappropriated funds is a NAFI contract. Despite some language in prior cases suggesting that the NAFI exclusion turns on the "activity" at issue, the exclusion did not depend on whether the contract itself was to be funded with appropriations. *See United States v. Gen. Elec.*, 727 F.2d 1567, 1570 (Fed. Cir. 1984). Instead, the nature of the contracting entity governed: namely, whether the contract was "made by" a NAFI. And an agency is only a NAFI where there is "a clear expression by Congress that it intended to separate the agency from general federal revenues." *Furash*, 252 F.3d at 1339.

Thus, our predecessor held that a contract made by the Agency for International Development ("AID") did not implicate the NAFI doctrine—even though the program implemented by the contract was to be run without appropriated funds—because AID (as a whole) received appropriated funds. *McCarthy v. United States*, 670 F.2d 996, 1002 (Ct. Cl. 1982). The court explained that "the nonappropriated funds exclusion is limited to instances when, by law, appropriated funds not only are not used to fund the agency, but could not be." *Id.*; *see also L'Enfant Plaza Props., Inc. v. United States*, 668 F.2d 1211, 1212 (Ct. Cl. 1982) (explaining that, to implicate the NAFI doctrine, "there must be a clear expression by Congress that the agency was to be separated from general federal

Quarters and Temporary Lodging Facility were built. *See* Authorization Act §§ 2301–02.

revenues"). Here, there is no question that the Air Force "has authority to use appropriated funds if and to the extent appropriated, and that is sufficient to avoid the nonappropriated funds exclusion." *See McCarthy*, 670 F.2d at 1002.[3]

The Task Order was made by the Air Force, and not the AFSVA. The NAFI doctrine, even if it survives under the CDA, is inapplicable.

B

The government argues alternatively that the CDA is limited to contracts for "the procurement of services" or "the procurement of construction . . . of real property," and the contract here does not qualify. Cross-Appellant's Br. 29–30 (citing 41 U.S.C. § 7102(a)). The contract here was for the design and construction of two buildings, the Temporary Lodging Facility and the Visiting Quarters. The Task Order falls neatly within the CDA's "procurement" language.

The government nevertheless contends that this was not a "procurement," relying principally on 31 U.S.C. § 6303. Section 6303 provides that:

An executive agency shall use a procurement contract . . . when—(1) the principal purpose of the instrument is to acquire . . . property or services for the direct benefit or use of the United States Government; or (2) the agency decides in a specific

---

[3]    Our decision in *General Electric* supports this conclusion. There, as here, the fact that the governmental counterparty to the contract was the Air Force was sufficient to place the dispute outside the NAFI doctrine. 727 F.2d at 1570.

instance that the use of a procurement contract is appropriate.

The government asserts that the buildings at issue here were built for the purpose of "support[ing] the morale, welfare, and recreation of the service member[s] or other guests," which the government contends is "a distinct purpose from that of the Air Force, whose primary function is national defense." Cross-Appellant's Br. 36. Thus, to the government, the Task Order is not "for the direct benefit or use of the United States Government," under the meaning of 31 U.S.C. § 6303.

The government's argument lacks merit. Section 6303 is not part of a statutory definition of CDA jurisdiction. It is in a separate title of the United States Code. It does not control the interpretation of the term "procurement" as used in the CDA. In any event, the government's position that a project supporting the morale and welfare of servicemembers is not for the "direct benefit" of the government is at odds with the Supreme Court's holding in *Standard Oil Co. of California v. Johnson*, 316 U.S. 481 (1942), which held that military post exchanges were "essential for the performance of governmental functions." *Id.* at 485. The government's position is also inconsistent with the Secretary of the Air Force's responsibility for "the morale and welfare of [Air Force] personnel." 10 U.S.C. § 9013(b)(9). Finally, section 6303 does not require that procurement contracts be for the "direct benefit or use" of the government. It states that agencies "shall use" procurement contracts in certain circumstances, but does not otherwise foreclose their use. Section 6303 contemplates procurement contracts even when not for the government's direct benefit so long as "the agency decides" that a procurement contract "is appropriate." The Task Order is a "procurement" contract under the CDA.

The government's reliance on *G.E. Boggs & Assocs., Inc. v. Roskens*, 969 F.2d 1023 (Fed. Cir. 1992), and *New Era Construction v. United States*, 890 F.2d 1152 (Fed Cir. 1989), is similarly unavailing. In each of those cases, we held the contractual dispute to be not subject to the CDA. But *G.E. Boggs* and *New Era*, unlike this case, involved contracts with entities—the Syrian Arab Republic and the Sac and Fox Tribe of Missouri, respectively—that were not executive agencies. *G.E. Boggs*, 969 F.2d at 1024; *New Era*, 890 F.2d at 1153.

We conclude that the Board had CDA jurisdiction.

## II

We next consider the timeliness of Parsons' appeal from ASBCA No. 61784 as it relates to our own jurisdiction. Parsons contends that the Board erred in denying recovery for costs Parsons allegedly incurred as a result of delays caused by a payroll review by the Air Force to determine Parson's compliance with the Davis-Bacon Act. The Act requires federal construction contractors to pay laborers and mechanics at least the prevailing wage for their work. 40 U.S.C. § 3142(a). Under FAR § 22.406–8, the government was authorized to ensure Davis-Bacon Act compliance by "[c]onduct[ing] labor standards investigations when available information indicates such action is warranted." Parsons asserts that it is entitled to compensation because the Air Force unreasonably delayed initiating and conducting such a review. We do not reach the merits of Parsons' payroll claim because we lack jurisdiction to consider it.

The procedural history of Parsons' payroll claim is as follows. On June 29, 2012, Parsons submitted the claims at issue here to the contracting officer, including its payroll claim. The contracting officer denied recovery and, on April 22, 2013, Parsons appealed to the Board. Parsons' appeal was initially docketed as ASBCA No. 58634. Litigation continued and, on September 5, 2018, the Board

issued its decisions on the merits of Parsons' claims, including the payroll claim. For all claims except the payroll claim, the Board issued its decision in the original case, ASBCA No. 58634. For the payroll claim, "[f]or reasons of judicial efficiency and clarity," the Board issued a separate opinion under a new appeal number, ASBCA No. 61784. J.A. 1 n.1. Parsons received the Board's decisions on September 10, 2018. On October 10, 2018, Parsons moved for reconsideration of the Board's decision on several claims in ASBCA No. 58634. Parsons did not seek reconsideration of the payroll claim in ASBCA No. 61784. The Board issued its decision denying Parsons' reconsideration request in ASBCA No. 58634 on January 23, 2019, which Parsons received on January 28, 2019. Parsons appealed the Board's decisions on its claims, including the payroll claim, to this court on May 23, 2019.

Parsons' appeal of its payroll claim was not timely filed. The statute governing appeals from the Board to this court provides that "a contractor may appeal the decision [of an agency board] within 120 days from the date the contractor receives a copy of the decision." 41 U.S.C. § 7107(a)(1)(A). The 120-day appeal period runs from contractor's receipt of the Board's decision on reconsideration, if reconsideration is sought. Although Parsons sought reconsideration of the Board's decision in ASBCA No. 58634 (and its appeal in that case is timely), Parsons did not seek reconsideration in ASBCA No. 61784. Parsons' appeal in ASBCA No. 61784 was filed 255 days after it received a copy of the final decision in that action. The 120-day deadline was not tolled by the request for reconsideration in ASBCA No. 58634. Therefore, we lack jurisdiction to review the Board's decision in ASBCA No. 61784. *See Placeway Const. Corp. v. United States*, 713 F.2d 726, 728 (Fed. Cir. 1983) (dismissing for lack of jurisdiction an appeal from the Board filed after the 120-day deadline).

We dismiss Parsons' appeal as to its payroll claim.

## III

We turn to the merits of Parsons' appeal in ASBCA No. 58634. Parsons argues that the Board erred in denying recovery on Parsons' claim that it was not required to apply wall coatings from Duroplex-Triarch Industries and Plexture-Triarch Industries (collectively, "Triarch") to the Visiting Quarters. Triarch is not "paint" in the conventional sense, though it is a paint-like substance.

The Board rejected Parsons' theory that it was required to apply Sherwin-Williams instead of Triarch, holding that Parsons was required to apply Triarch. The Board found dispositive the terms of Request for Proposal No. FA8903-05-R-8234 ("RFP"), on which the Task Order was based. The RFP "required 'Duroplex – Triarch Industries' and 'Plexture – Triarch Industries' for interior paints." J.A. 132 (quoting RFP § 09911). Parsons does not now challenge the determination that it was required to apply Triarch.

The Board, however, introduced a new theory of liability, finding the government liable for Parsons' costs in applying Sherwin Williams paint due to the Air Force's "indecision on what wall coating it wanted, causing [Parsons] to start applying Sherwin Williams paint in the [Visiting Quarters]." J.A. 132. But because Parsons did not argue this theory before the Board and did not quantify its cost in using Sherwin Williams, the Board denied Parsons recovery. On appeal, Parsons argues that the Board erred in denying Parsons recovery under the Board's theory. We disagree.

A required element of a claim for equitable adjustment is proof of damages. The contractor has the "obligation . . . to provide a basis for making a reasonably correct approximation of the damages" for which the government is liable. *Wunderlich Contracting Co. v. United States*, 351 F.2d 956, 969 (Ct. Cl. 1965). It was Parsons' burden to prove its

damages, i.e., the costs incurred in applying Sherwin Williams paint. The Board did not err in concluding that Parsons did not meet its burden.

Parsons contends that the record at the time of the Board decision included sufficient evidence to calculate Parsons' cost in using Sherwin Williams. But Parsons failed to include an alternative argument concerning the Air Force's erroneous direction to apply Sherwin Williams in the Visiting Quarters, and did not identify its costs in doing so. Nothing in *Southwest Electronics & Manufacturing Corporation v. United States*, 655 F.2d 1078 (Ct. Cl. 1981), or any other authority cited by Parsons suggests that the Board was required to scour the tens of thousands of pages of record evidence in this case, without any guidance, to determine the amount of an award.[4]

Parsons also asserts that the Board erred by failing "to seek the parties' input as to whether the record supported recovery under the Board's new theory prior to deciding the issue." Appellant's Br. 34. "The [Administrative Procedure Act] does not require the Board to alert a [claimant] that it may find the asserted theory," or any other theory that the

---

[4] In *Southwest Electronics*, the Board overturned the contracting officer's award, on the basis that the contractor did not establish the exact amount of its damages. 655 F.2d at 1088. In reinstating the contracting officer's award, our predecessor reasoned that the contractor "[did] supply some evidence of the damages for which [the government] is liable, and the contracting officer's award is a reasonable approximation of the damages which [the contractor] has proven." *Id.* Here, by contrast, there is nothing to indicate that the contracting officer awarded Parsons the cost of using Sherwin Williams, nor did Parsons provide the Board with evidence from which "a reasonable approximation" of that cost could be determined. *See id.*

claimant could have argued, "lacking in evidence before it actually does so in [an opinion]. Nor is a [claimant] entitled to a pre-decision opportunity to disagree with the Board's assessment of its arguments." *Fanduel, Inc. v. Interactive Games LLC*, No. 2019-1393, 2020 WL 4342681 (Fed. Cir. July 29, 2020). While Parsons directed the Board to this evidence on reconsideration, this was simply too late. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (a motion for reconsideration "may not be used to . . . present evidence that could have been raised prior to the entry of judgment").

## IV

We next turn to Parsons' contention that the Board erred in denying Parsons recovery for the added cost of using the "Baker design" rather than the "structural-brick" design for the Visiting Quarters.

The Board held that under the contract Parsons was entitled to use a structural-brick design to construct the Visiting Quarters. The Board also found that the government improperly denied Parsons the use of the structural brick design, and instead required Parsons to use what was called the "Baker design." The structural-brick design used a single wall made of closure face brick. The Baker design used two walls: a first wall of concrete masonry units and a second wall of brick veneer. After the award, the government directed Parsons to use the Baker design and to modify the original Baker design to address problems of progressive collapse,[5] a design choice that made construction more expensive.

---

[5] Progressive collapse is a phenomenon that occurs when certain structural members of a building are damaged and weight is transferred to other members that

Parsons sought an equitable adjustment for the increased design and construction costs of the Baker design over that of the structural-brick design.  The Board awarded Parsons a lesser amount for added construction costs: "the additional cost . . . required to make the Baker . . . design resist progressive collapse." J.A. 120–21. The Board awarded Parsons $722,176 in design costs.

The Board erred in not also awarding the full amount of Parsons' additional construction costs for using the Baker design over the structural-brick design.  The amount of an award for an equitable adjustment is "the difference between the reasonable cost of performing without the change . . . and the reasonable cost of performing with the change." *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1244 (10th Cir. 1999) (quoting *Celesco Indus., Inc.*, ASBCA No. 22251, 79–1 B.C.A. (CCH) ¶ 13,604, at 66,683 (1978)).  Here, the "cost of performing without the change" is the cost of construction using structural brick.  The "cost of performing with the change" is the actual cost of construction (i.e., the cost of using the modified double-wall design).  Parsons was entitled to the difference between these two amounts.

We reverse the Board's denial of recovery to Parsons for its claim to construction costs.  On remand, the Board must award Parsons the difference between its cost in constructing the Baker design compared to the cost Parsons would have incurred in constructing the structural brick design.

V

We turn finally to the government's cross-appeal challenging the Board's reasonable-costs analysis.

---

cannot handle the additional weight.  As a result, the building collapses.

The government contends that the Board erroneously shifted the burden as to reasonableness to the government, when the burden should have been on Parsons to prove reasonableness. The government points to Judge Clarke's opinion for the Board, which concluded that Parsons' costs were reasonable in part because the Air Force's did not provide "specific, individualized challenges to each of Parsons' claimed costs." Cross-Appellant's Br. 38. The government contends that this improperly saddled the government with the burden of proof. But Administrative Judge Clarke's analysis on this issue was expressly disclaimed by the other two panel judges in a concurring opinion written by Administrative Judge Shackleford and joined by Administrative Judge Prouty. Thus, Judge Shackleford's opinion, not Judge Clarke's opinion, is the Board's controlling opinion on the reasonable-costs issue.

The government does not contend that Judge Shackleford's opinion commits the same purported burden-shifting error as Judge Clarke's opinion. Instead, the government asserts that Judge Shackleford's opinion is "so devoid of any analysis that it cannot be plausibly reviewed for legal sufficiency on appeal." Cross-Appellant's Br. 44. We disagree. Judge Shackleford clearly stated the governing law and its application to this case. The government has not shown error in the Board's reasonable-costs analysis.

The government's challenge also fails because it has articulated no prejudice resulting from of the Board's purported error. "[T]he party that 'seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted.'" *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (quoting *Palmer v. Hoffman*, 318 U.S. 109, 116 (1943)); *see also SolarWorld Ams., Inc v. United States*, No. 2019-1591, 2020 WL 3443470, at *4–*5 (Fed. Cir. June 24, 2020) (rejecting an appellant's challenge to a purportedly unlawful agency action because the appellant did not establish that the action was prejudicial).

Here, the government has not explained which, if any, of the costs awarded to Parsons would have been affected by the Board's purported error or how they would have been affected. We conclude that the Board's purported errors, if any, were harmless.

We affirm the Board's conclusion that Parsons' costs awarded by the Board were reasonable.

## CONCLUSION

We conclude that the Board had CDA jurisdiction over ASBCA No. 58634. We dismiss Parsons' appeal as to its claim for costs associated with its payroll review (ASBCA No. 61784) as untimely. We affirm the Board's decision declining to award Parsons its costs in using Triarch wall coatings. We reverse the Board's decision declining to award Parsons its full costs in constructing the Baker design over the costs of the structural-brick design. We affirm the Board's conclusion that Parsons' claimed costs were reasonable. We remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, DISMISSED IN PART, AND REMANDED**

## COSTS

No costs.