ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| AICI-Archirodon JV | ) ASBCA No. 62201-QUAN |
| | ) |
| Under Contract No. W912ER-17-C-0014 | ) |

APPEARANCE FOR THE APPELLANT:   Scott M. Heimberg, Esq.
    Akin Gump Strauss Hauer & Feld, LLP
    Washington, D.C.

APPEARANCES FOR THE GOVERNMENT: Michael P. Goodman, Esq.
    Engineer Chief Trial Attorney
    Rebecca L. Bockmann, Esq.
    Samuel J. Harrison, Esq.
    Engineer Trial Attorneys
    U.S. Army Engineer District, Middle East
    Winchester, VA

OPINION BY ADMINISTRATIVE JUDGE OSTERHOUT

After our decision on the parties' cross-motions for summary judgment (*AICI-Archirodon JV*, ASBCA No. 62201, 21-1 BCA ¶ 37,907) granting the government's motion for entitlement but denying its motion as to quantum, the parties have briefed the quantum issue and oral arguments were held on December 14, 2022. For the reasons stated below, we determine that the government's initial downward adjustment of $1,384,220 was excessive; however, the government's modification to a $1,105,586.64 downward adjustment after oral argument[1] resolves the quantum dispute. Therefore, we deny the quantum appeal.

STATEMENT OF FACTS (SOF)

1. On July 19, 2021, the Board issued its decision granting the government's motion for summary judgment on entitlement and denying the government's motion for quantum.[2] The Board also denied appellant's motion for summary judgment for

---

[1] As discussed below, it is slightly more complicated, involving the payment of Contract Disputes Act (CDA) interest to make up for the initial overly large adjustment. Effectively, however, it will be as if the original downward modification were only $1,105,586.64.

[2] We have already provided the background facts pertinent to this appeal in the Board's decision on the parties' cross-motions for summary judgment dated July 19, 2021.

entitlement and granted its motion for quantum stating, "we cannot decide quantum based upon the record as we have it before us." (*Id.* at 184,106)  The issue of quantum was returned to the parties to determine.

2.  By correspondence dated December 9, 2021, appellant requested that the Board set a schedule and date for a hearing to resolve the quantum part of this dispute as the parties had come to an impasse in resolving this issue.  By Order dated December 14, 2021, the parties were directed to jointly propose hearing dates and this appeal was docketed as ASBCA No. 62201-QUAN on January 10, 2022.

3.  Contract No. W912ER-17-C-0014 was awarded to AICI-Archirodon JV (appellant or AAJV) on September 25, 2017 (R4, tab 4 at 2-3).  The design-build, firm fixed-price contract was for the replacement of the Mina Salman Pier at Naval Support Activity, Bahrain (R4, tab 4 at 1).  The contract also included, amongst other things, individual fixed-price contract line items (CLIN) for design, mobilization and demobilization, steel pier construction (CLIN 0003AA), and operations and maintenance (*id*. at 4-8).  As part of the pier replacement project, appellant needed to ship steel piles for the pier from South Korea, where the piles were fabricated, to Bahrain (app. br. at 2; app. initial statement of costs at 2, ex. 4a).[3]  Based on the record, we find that the shipping cost for the steel piles was included in the lump sum amount for construction under CLIN 0003AA.  The contract included the relevant Defense Federal Acquisition Regulation Supplement (DFARS) clause, DFARS 252.247-7023, TRANSPORTATION OF SUPPLIES BY SEA (APR 2014) (R4, tab 4 at 14) which allows contractors to request a waiver of the requirement that shipments must be made by U.S.-flag vessels under certain listed circumstances, such as when there are no U.S.-flag vessels available or when "freight charges are inordinately excessive or unreasonable."  DFARS 252.247-7023(c)(1)-(3), TRANSPORTATION OF SUPPLIES BY SEA (APR 2014).  Under this provision, contractors are also required to provide the contracting officer (CO) and the Maritime Administration, Office of Cargo Preference, U.S. Department of Transportation (MARAD) with a copy of the bill of lading.  DFARS 252.247-7023(e), TRANSPORTATION OF SUPPLIES BY SEA (APR 2014).  The clause further provides that "[i]n the event there has been unauthorized use of foreign-flag vessels in the performance of this contract, the Contracting Officer is entitled to equitably adjust the contract, based on the unauthorized use."  DFARS 252.247-7023(g), TRANSPORTATION OF SUPPLIES BY SEA (APR 2014).

---

*AICI-Archirodon JV*, ASBCA No. 62201, 21-1 BCA ¶ 37,907.  Familiarity with that decision is assumed for purposes of resolving the quantum phase of this dispute.

[3] App. br. refers to appellant's pre-hearing brief filed March 29, 2022.  Appellant filed its initial statement of costs with exhibits on February 8, 2022, and the government responded on March 8, 2022.  Appellant filed an amendment to its statement of costs on March 15, 2022, and the government responded on March 22, 2022.

4. The related applicable August 2010 Procedures, Guidance and Information (PGI) section of the DFARS, PGI 247.573(b)(1)(ii)(C), outlines the procedures that COs are required to follow in the event a contractor finds that the U.S.-flag vessels freight charges are "excessive or otherwise unreasonable." After a contractor has notified a CO that the U.S.-flag carrier proposed costs are excessive, the CO "shall prepare a report" taking into account a number of enumerated factors including excessive profits to the carrier and excessive costs to the government. DFARS, PGI 247-573(b)(1)(ii)(C)(1)(i)-(iii). When determining if the cost to the government is excessive, the CO is to include in their analysis factors such as: the difference in cost between the U.S.-flag vessel and the foreign-flag vessel (FFV), comparisons between rates charged on similar routes, the efficiency of the route and suitability of the vessel. DFARS, PGI 247-573(b)(1)(ii)(C)(1)(iii). A higher cost of the U.S.-flag vessel as compared to a FFV is not sufficient alone to justify the use of a FFV. DFARS, PGI 247-573(b)(1)(ii)(C)(1)(i). The CO is then to forward this report to Military Sealift Command (MSC) and then MSC forwards the report to the Secretary of the Navy to determine if the proposed charges are excessive or unreasonable. DFARS, PGI 247-573(b)(1)(ii)(C)(2), (3). If the charges are found to be excessive, the CO gives the contractor written approval to use a non-U.S.-flag carrier. DFARS, PGI 247-573(b)(1)(ii)(C)(3).

5. In May of 2018, AAJV enlisted the help of a global vessel broker, Gulf Agency Co. (GAC), to secure a vessel capable of transporting the steel piles. GAC discovered that there were only nine U.S.-flag vessels capable of transporting this kind of cargo. (Borossay report at 4[4]) Using location data from August, September, and October 2018, Mr. Borossay explained that seven of the nine U.S.-flag vessels able to transport this type of cargo "were not within global range to handle the move" (*id.* at 10). Additionally, only one of the two remaining vessels, the Ocean Glory, "appear[ed] to have been available for the long deviation to the Middle East" (*id.*). Appellant received a quote from the U.S.-flag vessel Ocean Glory for $1,384,220 prior to shipping the steel piles via FFV (R4, tab 2 at 4; Borossay report at 4). The quote was received on August 29, 2018, and was only valid until August 30, 2018 (R4, tab 6 at 11-12). AAJV submitted a request to use a FFV on August 30, 2018, citing what it viewed as excessive costs for the U.S.-flag vessel (R4, tab 6 at 1). The CO rejected the request because it was not timely in accordance with DFARS 252.247-7023 and lacked some of the requisite information (R4, tabs 7 at 1, G-1, Declaration of CO Andrea Greene (Greene decl.), at 2). AAJV shipped the piles via FFV; there is no disagreement between the parties that the actual cost of shipping via FFV was $278,633.65 (app. br. at 6 (citing R4, tab 45); gov't resp. to app. initial statement of costs at 3). On December 12, 2018, the CO sent a letter to AAJV stating,

---

[4] The "Borossay report" refers to the expert report of appellant's expert, Mr. S. Gregory Borossay, which was submitted as exhibit 2 to appellant's initial statement of costs, filed March 16, 2022.

3

[u]pon consideration and in consultation with the U.S. Maritime Administration (MARAD), we believe an appropriate equitable adjustment would be a downward adjustment of the contract price by $1,105,586.64 based on the differential between the costs AICI/Archirodon JV incurred for the shipment of the piles and the costs that you would have incurred had a U.S. Flag vessel been utilized at the quoted rate for such cargo . . .

(R4, tab 12 at 1). The CO explained that AAJV could respond if it did not agree with the proposed adjustment and if no response was received a contract modification would be issued for the proposed adjustment (R4, tab 12 at 2). By letter dated December 19, 2018, AAJV responded to the CO disputing that it violated DFARS 252.247-7023 and requested that the CO reconsider the adjustment (R4, tab 13 at 1-2). The government responded by letter dated April 9, 2019 (R4, tab 14). In the letter the contracting officer stated that if AAJV signed the "enclosed modification by 15 April 2019," the contract would be adjusted downward by $1,107,376. If, however, AAJV did not execution the modification, the government would "issue a unilateral modification reflecting a downward adjustment of $1,384,220, the amount to which the Government is entitled for the rejected, non-compliant shipping method." (*Id.* at 3) AAJV responded on April 13, 2019, disagreeing with the proposed modification and arguing that neither the proposed bilateral modification nor the unilateral modification, should AAJV not agree to the bilateral modification, "represents an equitable result given the circumstances that led to the use of a non-US flag vessel" (R4, tab 15 at 1). The CO adjusted the contract downward (CLIN 0003AA) by the amount of the Ocean Glory quote, $1,384,220, through contract Modification No. P00009 dated April 16, 2019 (R4, tab 5).

6. As part of its quantum case, appellant sought to provide evidence that the price quoted for the Ocean Glory was "unreasonable." Appellant's expert, Mr. Borossay, has over 30 years of experience in international container transportation including familiarity with pricing and "cost/benefit analysis research to establish the value proposition for all types of breakbulk and project cargo" (Borossay report at 1-2). Mr. Borossay opined that "[t]he uncertain availability of only one suitable US Flag vessel on the globe coupled with the excessively high freight rate being charged by the owners of the Ocean Glory me[t] the burden for a waiver allowing use of a foreign flag vessel here" (Borossay report at 6). Additionally, in his expert opinion, "freight rates 50% above or perhaps double that of the commercial foreign flagged market is adequate compensation but not a rate five times above foreign flag rate levels" (*id.*). Mr. Borossay further stated that the Ocean Glory was the only available U.S.-flag vessel at the time appellant was looking to ship the steel piles and "[i]t is likely that the owners of the Ocean Glory were aware of this information at the time in question which would explain their unreasonably high quotation" (*id.* at 13).

4

7. The CO did not follow the DFARS procedures outlined above (SOF ¶ 4) noting in her declaration that "AAJV's request provided insufficient information for me to draft" the report described in the PGI (Greene decl. ¶ 10). Thus, MSC did not make a determination on the reasonableness of the cost of the U.S.-flag vessel quote. In her declaration, the CO stated that she sought guidance from MSC but because appellant ultimately shipped the piles via FFV without prior authorization, "MSC would take no further action regarding AAJV's request" (Greene decl. ¶ 11). The government did not provide any testimony from MSC on the reasonableness of the cost of the U.S.-flag vessel quote. MARAD, the agency DFARS 252.247-7023 designates contractors should submit their bills of lading to (SOF ¶ 3), became involved in this dispute when the Supervisory Transportation Specialist, Mr. Michael Hokana, was notified by an ocean carrier of "inquiries for foreign-flag rates to ship large quantities of steel from South Korea to Bahrain" (R4, tab G-2, Declaration of Michael Hokana, at 2).

8. The government decided to advance its own evidence of "reasonableness" and used Mr. Hokana's testimony[5] to introduce and explain two "similar" bills of lading to support the reasonableness of appellant's U.S.-flag vessel quote. Mr. Hokana testified that MARAD receives about 1,000 bills of lading per year and maintains six years of records (Hokana decl. at 1; Hokana dep. at 71-72). Mr. Hokana was asked by government counsel in February of 2022, after the commencement of this quantum phase, to try to find similar bills of lading to the Ocean Glory quote that appellant received in August 2018 (Hokana decl. at 2). Mr. Hokana found two bills of lading he considered to be similar—the Ocean Grand and the Ocean Globe (*id.* at 2-3). To find these bills of lading, Mr. Hokana and his staff relied on their memory of non-standard bills of lading that had been filed with MARAD recently (Hokana dep. at 39-42). Mr. Hokana testified that he had almost no experience in pricing and no experience in determining whether shipping rates are excessive (*id.* at 52, 60).

9. Of the two bills of lading submitted by the government, we find that the Ocean Grand bill of lading is the most similar, however, there are clear differences between the Ocean Grand bill of lading and the Ocean Glory quote.[6] The Ocean Grand is a "sister

---

[5] By Order dated August 29, 2022, in denying appellant's motion to strike Mr. Hokana's testimony that it characterized as expert testimony, the Board advised the parties that it considered Mr. Hokana to be a lay witness. Further, the Board reminded the parties that "the Board uses the Federal Rules of Evidence as a guide" and would "apply the appropriate weight" to testimony from a lay witness. Because Mr. Hokana's personal knowledge and involvement in the events leading up to the dispute and prior to the commencement of this litigation have been helpful to the Board in understanding of the bills of lading presented in the record, we include his testimony here.

[6] The government uses the Ocean Grand bill of lading alone to support its arguments apparently finding as we do that the Ocean Globe bill of lading is not sufficiently

5

ship" of the Ocean Glory (Hokana decl. at 2; Hokana dep. at 50) and carried a similar weight of steel to appellant's Ocean Glory quotation (Hokana decl. at 2; Borossay decl. at 2); however, that appears to be where the similarities end. The Ocean Grand traveled between ports in Aliaga, Turkey, and Houston, TX, with final delivery of the steel to San Diego, CA, presumably by some overland method like trucking (Hokana decl. attach. 1; Hokana depo. at 50, 52-54; Borossay decl. at 2). Mr. Borossay explained that "U.S. port costs are typically much higher on a per vessel basis than global ports in Asia, Europe and the Middle East . . . mainly due to the high cost of US Longshore labor" (Borossay decl. at 2). Additionally, delivery costs from Houston to San Diego appear to be included in the price here which we find may have increased the cost.

10. Appellant stated that "after shipping the piles via foreign-flag vessel, AICI-Archirodon continued to investigate the reasonable cost of shipping the piles via U.S.-flag vessel. In December 2018, AICI-Archirodon received a quotation for the shipment on a U.S.-flag vessel of $352,488.15" (app. br. at 15). The product description is listed as 146 "pier pilings." The evidence relied upon by appellant to support this statement is a one-page "Ocean Freight Quote" by a company referring to itself as "Distribution by Air – BWI." This "quote" is undated and states that the inquiry from AAJV was made on November 6, 2018 and that the quote expired after 30 days. It also excluded numerous specified charges. The quote does not identify the particular U.S. Flagged ship that would perform the work or provide any indication of its availability. (App. initial statement of costs ex. 7) Rather, the email forwarding it to appellant, dated December 20, 2018, states that it reflects the "port to port rate for the . . . shipment" (App. initial statement of costs ex. 6). During oral argument, the government noted that the quotation did not include the name of the U.S.-flag vessel and "[i]t is not provided with the context of any negotiation as are the other quotes and is other[wise] distinguishable from the quotations presented and relied upon by the government" (tr. 69). We agree with the general concerns of the government and do not find this "quotation" to be competent evidence to demonstrate the reasonable cost of a U.S. flagged ship to conduct the shipping necessary here, nor that one was even truly available at the time requested.

11. Oral arguments were held on December 14, 2022. By correspondence dated January 24, 2023, the government requested a conference call with the Board. The conference call was held on January 26, 2023, and the government disclosed that it was considering issuing a modification to put part of the $1,384,220 back on to the contract. The government was instructed to move, in writing, to reopen the record. The government so moved on February 13, 2023. The motion was granted, and the government supplemented the Rule 4 file to include bilateral Modification No. P00012 (Mod. 12), dated March 28, 2023, between the parties to add $278,633.65, the cost AAJV

similar to compare in this context (gov't resp. to app. initial statement of costs at 13; Hokana dep. at 59).

6

incurred by shipping the piles via FFV, plus CDA interest back onto the contract (R4, tab 51 at 1). In that modification the government stated:

> The purpose of this modification is to:
> a. Adjust the contract price to reflect the partial amount to which the contractor is entitled from its 25 June 2019 certified claim seeking $1,244,903.17. The contractor's 25 June 2019 claim sought a partial reversal of the amount of the Government's $1,384,220.00 downward adjustment via Modification P00009 dated 16 April 2019. The downward adjustment was initiated due to the contractor's violation of DFARS 252.247-7023, when it shipped the steel piles under this contract with a foreign flag vessel without prior approval to do so. The amount of the downward adjustment erroneously included $278,633.65, the amount AAJV represented as its actual costs for shipping the steel piles via foreign flag vessel, in violation of the contract. The total amount of this modification includes $278,633.65, plus CDA interest accruing from the date of the contractor's 25 June 2019 claim for a totalt [sic] of $300,767.61.

(*Id.*). The total modification amount, effective April 1, 2023, was $300,767.61 (*id.*). For the reasons discussed below, this resolves the quantum dispute.

## DECISION

As we held previously, AAJV violated the terms of the contract by shipping the steel piles via FFV without prior authorization. *AICI-Archirodon JV*, 21-1 BCA ¶ 37,907 at 184,104. In that decision, we were unable to determine the proper deduction amount explaining,

> "We have held that, when a contractor performs in a less costly manner than required by the contract, the Government is entitled to realize these savings; the change in cost of performance to the contractor, and not damages to the Government, is the basis of adjustment (even when the contractor's bid did not anticipate incurrence of the costs)." *Federal Boiler*, 94-1 BCA ¶ 26,381 at 131,217 (citing *Davis Constructors, Inc.*, ASBCA No. 40630, 91-1 BCA ¶ 23,394 at 117,391-92; *Bruce Andersen Co.*, ASBCA Nos. 29412, 32247, 89-2 BCA ¶ 21,872 at 110,037). Here, instead of deducting the changed amount of the cost of performance to

7

the contractor, the government reduced the contract by $1,384,220, the full amount of the quote for the U.S. flag ship (SOF ¶ 14). The pleadings and the record before us do not demonstrate the proper deduction amount. Thus, we cannot decide quantum at this time.

*AICI-Archirodon JV*, 21-1 BCA ¶ 37,907 at 184,106.

The government contends that the sole issue here is, "when considering what it would have cost Appellant to ship the steel piles via U.S. flag vessel, did the amount of the downward adjustment make Appellant whole?" (gov't resp. to app. amended statement of costs at 1) (emphasis omitted). Further, the government argues that the proper downward adjustment should take into account the "best evidence" of the cost of shipping the piles via U.S.-flag vessel; the government argues that the best evidence is the Ocean Glory quote appellant received in August 2018 (*id.* at 7; tr. 6-8, 68). Appellant argues that "[t]he appropriate equitable adjustment in this case is the difference between two numbers: (1) the reasonable cost to AICI-Archirodon of shipping on a foreign-flag vessel, and (2) the reasonable cost to AICI-Archirodon of making the shipment on a U.S.-flag vessel" (app. br. at 6).

*I. Jurisdiction*

Where the Board finds entitlement on an appeal and remands for determination of quantum, it retains jurisdiction until quantum is either settled by the parties or decided by the Board." *Individual Dev. Assocs., Inc.*, ASBCA Nos. 55174, 55188, 06-1 BCA ¶ 33,349 at 165,369 (citing *La Ltd., La Hizmet Isleteleri*, ASBCA No. 53447, 04-1 BCA ¶ 32,478 at 160,635; *The Swanson Grp., Inc.*, ASBCA No. 53496, 02-1 BCA ¶ 31,800 at 157,080; *Nab-Lord Assocs. v. United States*, 682 F.2d 940, 943 (Ct. Cl. 1982)). After finding for the government on entitlement in the summary judgment decision, the parties were unable to settle the quantum dispute. Thus, the Board retains jurisdiction over this appeal, and we decide quantum here.

*II. Legal Framework*

When the government makes a downward adjustment to a contract price to compensate itself for work not provided by the contractor (here, the failure to utilize a U.S. flagged vessel), the burden of proof rests upon the government to prove the amount of credit due to it. *States Roofing Corp.*, ASBCA No. 55508, 09-2 BCA ¶ 34,149 at 168,801 (citing *Nager Electric Co. v. United States*, 442 F.2d 936, 946 (Ct. Cl. 1971). Under the contract's Changes clause, that amount is simply "the cost that the contractor would have incurred if it had complied with the contract." *American West Construction, LLC*, ASBCA No. 61094, 18-1 BCA ¶ 36,935 at 179,948 (citing *Fox Construct. Inc.*, ASBCA No. 55265 *et al.*, 08-1 BCA ¶ 33,810 at 167,370-71); *see also Federal Boiler Co.*, ASBCA No. 40314, 94-1 BCA ¶ 26,381 at 131,217 (cited in our entitlement

decision) ("when a contractor performs in a less costly manner than required by the contract, the Government is entitled to realize these savings; the change in cost of performance to the contractor, and not damages to the Government, is the basis of adjustment")(citations omitted). Here, it is not just the Changes clause that allows for the CO to make this downward adjustment, but also the Transportation of Supplies by Sea clause, itself, which provides for an equitable adjustment (SOF ¶ 3). But neither party has given us any reason to analyze the decision on these bases differently than if it were under the Changes clause.

As noted above, AAJV does, however, make an argument based upon "reasonableness." Resting primarily upon law regarding equitable adjustments when the government *adds* work, it argues that we must determine what a "reasonable" U.S. flagged ship would have cost, rather than the one that it had provided as the only alternative to the government when it sought to be excused from the obligation to use the U.S. flagged ship (*see* app. br. at 5, *citing Parsons Evergreene, LLC v. Sec'y of the Air Force*, 968 F.3d 1359, 1369 (Fed. Cir. 2020) (quoting *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1244 (10th Cir. 1999)). AAJV also cites other cases involving deductive changes that supposedly include the "reasonableness" term, such as *HCS, Inc.*, ASBCA No. 60533, 16-1 BCA ¶ 36,502 and *Fox Constr. Inc.*, ASBCA Nos. 55265, 55266, 55267, 08-1 BCA ¶ 33,810 (*see* app. br. at 5). Interestingly, *HCS* does not formulate its test based upon reasonableness, but instead provides that, "[w]here a credit is claimed for decreased work, as here, the credit is measured by the contractor's net cost savings," 16-1 BCA ¶ 36,502 at 177,855, which is not quite the same thing. Similarly, while *Fox Construction* did posit a "reasonable costs" test (for costs that could be estimated, but not necessarily precisely known), it also stated that, "the pricing for the deductive change should be based on the contractor's current estimate or "would have" cost for performing the deleted work as of the time of the deductive change." 08-1 BCA ¶ 33,810 at 167,371.

With all of the cases put together, it is clear that when we determine the proper adjustment of a contract price for deleted work, we use "reasonable" to make estimates of what the foregone work would have cost the contractor, not to relieve the contractor of unavoidable real life costs that it would consider to be unreasonable.[7] Put another way, resonant with the facts here: if there is only one way to comply with a contract and the

---

[7] Not to put too fine a point on it, but the contract explicitly provided a means for AAJV to free itself of unreasonable costs: recourse to the CO to seek an exemption. It did not properly avail itself of this method and thus cannot now argue that we should, nevertheless, relieve it of the arguably unreasonable costs of complying with the contract. We also note that such defenses as commercial impracticability (which AAJV did not avail itself of here) exist which would put a limit on unreasonable prices so that, say, a $100 million fee hypothetical is not a real threat.

costs of doing so are fixed, then, by definition, incurring those costs is reasonable on the part of the contractor. What the cases do not require is for us to construct an imaginary "reasonably priced U.S. flagged ship" when no such ship was available, even while we have the actual cost of a real and available ship at our fingertips.

III.    *Quantum Determination*

When it sought relief from the U.S flagged ship requirement, AAJV presented evidence that only one ship could have done the job it needed – the Ocean Glory – and that it would have been at the cost of $1,384,220. AAJV has not changed this position, and Mr. Borossay's report, proffered by AAJV, confirms it. We have little doubt that the Ocean Glory's owners had AAJV well and truly over a barrel; nevertheless, since it was the only option available, absent relief from the government, chartering the Ocean Glory at that rate would have been the only reasonable course of action available to a contractor wishing to comply with the contract.[8] Given these unchallenged factual circumstances, the government has met its burden of proving the difference in cost between performing and not performing this portion of the contract. Thus, the cost of the Ocean Glory, minus the cost that AAJV incurred in chartering its foreign flagged vessel, is the proper measure of damages here. Though the government improperly neglected to subtract out AAJV's actual costs when it first considered this matter, that error has since been corrected.

CONCLUSION

The government already partially adjusted the contract, resolving quantum here. The appeal is denied.

Dated: February 26, 2025

HEIDI L. OSTERHOUT
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

---

[8] Although not dispositive to our decision here, it is worth noting, of course, that had AAJV sought a U.S. flagged ship in a more timely manner, the Ocean Glory may have had less bargaining power.

I concur                                                    I concur


OWEN C. WILSON                                  J. REID PROUTY
Administrative Judge                                Administrative Judge
Acting Chairman                                       Vice Chairman
Armed Services Board                              Armed Services Board
of Contract Appeals                                   of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62201-QUAN, Appeal of AICI-Archirodon JV, rendered in conformance with the Board's Charter.

Dated: February 26, 2025


PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals